IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| APEX SCHOOL OF THEOLOGY,<br><br>Plaintiff,<br><br>v.<br><br>ELISABETH DEVOS, SOLELY IN HER OFFICIAL CAPACITY AS SECRETARY OF THE UNITED STATES DEPARTMENT OF EDUCATION,<br><br>Defendant. | Civil Action No. 1:19-cv-955 |

## DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR INJUNCTIVE RELIEF

COMES NOW Defendant, Elisabeth Devos, solely in her Official Capacity as Secretary of the United States Department of Education, by and through Matthew G.T. Martin, United States Attorney for the Middle District of North Carolina, and submits this Response in Opposition to the Plaintiff's Emergency Motion for Preliminary Injunction. (Dkt. 2.) Apex School of Theology ("Apex") requests that the Court issue a Preliminary Injunction, restraining the Department of Education ("Department") from either (1) considering the Inspector General ("IG") investigation of a Columbus, Georgia location while processing Apex's request for reimbursement of Spring semester 2019 federal student aid ("FSA") or (2) delaying processing Apex's request for reimbursement of Spring semester 2019 FSA on the basis of the IG investigation. (Dkt. 2.) Apex claims that "absent

an injunction" it will close. Thus, Apex requests a preliminary injunction to compel the Department to process Apex's request for reimbursement without further delay. (Dkt. 3 at p. 2.)

## I. INTRODUCTION

The Defendant, U.S. Department of Education ("Department"), opposes Plaintiff's motion for injunctive relief filed on September 17, 2019, because Plaintiff is not entitled to such relief as a matter of law nor can it satisfy the applicable standards for receipt of such an extraordinary measure.

First, injunctive relief, such as that requested by Plaintiff, is prohibited by the anti-injunction provision of Title IV of the Higher Education Act of 1965 (HEA), as amended (Title IV). 20 U.S.C. § 1070 et seq. The disruption to the Department's oversight responsibilities and its administrative process that would occur if injunctive relief is granted is exactly what Congress intended to prevent when it enacted the relevant provision. Second, even if this Court determines that injunctive relief is available, Plaintiff has failed to meet the specific standards necessary for such relief to be granted. Consequently, the request for injunctive relief should be denied.

## II. BACKGROUND

### A. Institutional and Student Title IV Eligibility

Title IV establishes several programs pursuant to which postsecondary students can obtain federal grants and federally assisted loans to help them in paying for their

education. 20 U.S.C. § 1070. As relevant here, the Title IV programs include the Federal Pell GrantProgram (Pell) and the Federal Direct Loan Program (Direct Loan). These programs are administered by the U.S. Department of Education(Department), Federal Student Aid (FSA).

Only institutions of higher education that meet Title IV eligibility requirements are eligible to participate in the Title IV programs. 20 U.S.C. § 1085, 1088, 1094. In order to begin, and continue, participation in the Title IV programs, an institution must meet threshold eligibility requirements. These threshold eligibility requirements include, among other things, that an institution be accredited by a nationally recognized accrediting agency and be licensed in the state in which it operates. 20 U.S.C. § 1002, 1003; 34 C.F.R. §§ 600.4, 600.5, 600.6.

When an institution seeks to participate, or continue participation, in the Title IV program, it files an application with the Department to establish that it meets the requisite statutory and regulatory requirements. Government Exhibit ("GE") A, Castellanos Declaration at ¶ 4. In its application, the institution must provide, among other things, information regarding its accreditation and licensing status, the educational programs it offers, and the locations at which it offers these programs. If the application for participation is approved, the Department generates an Eligibility and Certification Approval Report (ECAR) which establishes the approved locations and programs. GE A, Exhibit 1.

Once an institution meets the initial threshold requirements and is approved by the Department as an eligible participant in the Title IV programs, the institution signs a Program Participation Agreement (PPA) with the Department. 20 U.S.C. § 1094(a). By signing the PPA, an institution agrees to act in the capacity of a fiduciary with respect to the administration of the Title IV programs and to comply with all statutory and regulatory requirements relating to those programs. 34 C.F.R. § 668.82(a). A school's failure to meet its fiduciary obligation to comply with all Title IV requirements can result in an administrative action being taken against the school by the Department. 20 U.S.C. § 1094(c). An institution cannot contract out its obligations under the Title IV programs. See GE A, Castellanos Decl. at ¶ 6.

A student is eligible to receive Title IV funds if he/she is enrolled in an eligible program at an eligible institution and meets all other student eligibility requirements. 20 U.S.C. § 1091; 34 C.F.R. § 668.32; see also 34 C.F.R. Part 668, Subpart C. To apply for Title IV assistance, a student submits a Free Application for Federal Student Aid (FAFSA) to the Department. That application is processed by the Department's central processor where it is run through some initial checks to determine if all necessary information is included, and then the student's expected family contribution is calculated. The Department's system will also check for some basic issues such as previous loan defaults or incorrect social security numbers. If the application passes the initial checks, the Department issues an Individual Student Information Report (ISIR) which provides an

institution the basis to process the student for Title IV funds. GE A, Castellanos Decl. at ¶ 7; Exhibit 3. The "award" documents submitted by Plaintiff are not generated by the Department's processor. GE A, Castellanos Decl. at ¶ 8. The initial processing of the FAFSA is not a full check of a student's eligibility for Title IV funds. The institution is responsible for ensuring that a student meets all eligibility requirements. GE A, Castellanos Decl. at ¶ 7.

### B. Title IV Methods of Payment

Institutions receive Title IV funds under either the advance payment system, the heightened cash monitoring system (HCM) or the reimbursement system of payment. 20 U.S.C. §1226a-1; 34 C.F.R. § 668.162. Under all three systems of payment, an institution acts as a fiduciary for the Department in calculating and disbursing funds under the Federal programs. 20 U.S.C. § 1094(a).

Under the advance payment system, the Department provides funds to an institution before the institution pays the student beneficiaries. In general, the Department provides these funds based simply on an institution's request for them. An institution is not required to account to the Department for these payments before receiving them. 34 C.F.R. § 162(b). An after the fact accounting is provided through a required annual audit. 34 C.F.R. § 668.23.

Under the HCM2 method of payment, which is the relevant payment method in this case, an institution must credit a student's account for the amount of funds the

student is eligible to receive and request reimbursement of that payment from the Department. 34 C.F.R. § 668.162(d)(2). The Department's payment of funds under this method of payment is contingent on the institution, through the submission of documentation to Department officials, establishing that a valid payment has been made to an eligible student. 34 C.F.R. §§ 668.162(c),(d)(2). The Department only pays the HCM2 claim once it is satisfied that the request for funds for a particular student is valid. In effect, this method of payment requires an accounting of Title IV funds before payment.

The Department has the sole discretion to determine the method of payment under which it provides Title IV funds to an institution. 34 C.F.R. § 668.162(a). Institutions are placed on the HCM2 method of payment if the Department believes that there are financial concerns regarding the institution's continued viability to continue operation or where the Department has concerns regarding the institution's administration of the Title IV programs. GE A, Castellanos Decl. at ¶ 10.

### C. Apex's HCM2 Status

Apex is participating in the Title IV programs under a PPA that was signed in November 2017. GE A, Exhibit 2. As evidenced by the ECAR generated from Apex's recent recertification application, the institution operates in Durham, North Carolina. GE A, Exhibit 1. As discovered during the IG investigation, Apex has students that receive Title IV funding that do not actually attend the location in North Carolina. Since the

6

President of the location in North Carolina signed the PPA with the Department, that entity and all employees working for that institution are responsible for the proper administration of the Title IV programs even if the students are attending through one of the many learning facilities it operates. See GE A, Castellanos Decl. at ¶ 22.

The Department's IG is conducting an investigation of Apex's administration of the Title IV programs. GE A, Castellanos Decl. at ¶ 14. Contrary to Plaintiff's claims, an investigation or review of an institution's administration of the Title IV programs is not limited to an isolated location or site since the entire entity is responsible for the proper administration of the program. After the IG provided FSA information regarding its investigation, a decision was made to place Apex on HCM2 method of payment. GE A, Exhibit 4; Castellanos Decl. at ¶ 15. Apex was provided detailed instructions on how to submit claims and what documentation needed to be provided. Id. A complete package was finally submitted to the Department on August 1, 2019. GE A, Castellanos Decl. at ¶ 18. Due to the serious issues uncovered during the IG investigation, the Department made a decision to review all of the student files submitted for the package. That review is not yet complete. Based on the issues uncovered so far in the review, FSA may have to reject the package. If that action is taken, Apex would be permitted to resubmit the package. GE A, Castellanos Decl. at ¶¶ 12, 19.

7

Case 1:19-cv-00955-TDS-JLW Document 10 Filed 10/08/19 Page 7 of 19

# ARGUMENT

A. **Plaintiff's Request for Injunctive Relief Is Prohibited Under the Provisions of the Higher Education Act**

In its Complaint, Plaintiff requests injunctive relief that is prohibited under the Higher Education Act which is the controlling statutory provision for the Department of Education's oversight of institutions. In its Complaint Plaintiff specifically requests the Court enjoin the Department from (1) considering the OIG investigation of the Georgia site while processing Apex's request for reimbursement or (2) delaying Apex's request for reimbursement on the basis of the OIG investigation. (Dkt. 1, ¶ 88.) These are exactly the types of actions prohibited under the anti-injunction provision of the HEA.

The provisions of the HEA do provide a limited waiver of sovereign immunity for suits against the Department. That limited waiver, however, does not apply to injunctive relief. The anti-injunction provision of the HEA specifically provides that "…no attachment, injunction, garnishment, or other similar process, mesne or final, shall be issued against the Secretary or property under the Secretary's control…" 20 U.S.C. § 1082(a)(2). Courts have repeatedly recognized and upheld this anti-injunction provision when injunctive relief has been requested against the Department. See American Association of Cosmetology Schools v. Riley (AACS), 170 F.3d 1250 (9th Cir. 1999); Carr v. DeVos, 369 F.Supp.3d 554 (S.D.N.Y. 2019); Kemper v. U.S. Department of Education, 285 F.Supp.3d 145 (D.D.C 2018); Green v. United States, 163 F. Supp.2d 593 (W.D.N.C. 2000). Declaratory relief is also prohibited if it seeks to accomplish what injunctive relief

would accomplish. AACS, 170 F.3d at 1253-1255. The anti-injunction provision should similarly be applied to Plaintiff's request here. While Plaintiff may challenge a future final decision by the Department regarding the pending HCM2 request, it may not be granted injunctive relief that would prohibit the Department from fulfilling its oversight responsibilities with respect to that HCM2 request.

To support its request for injunctive relief in this case, Plaintiff cites Cantebury Career Schools, Inc. v. Riley, 833 F. Supp. 1097 (D.N.J 1993) (Cantebury) and Climate Control Institute of Oklahoma v. Alexander, No. 93-C-0198-E WL 840270 (N.D. Ok 1993) (Climate Control) where the court ordered injunctive relief despite the HEA's anti-injunction provision. Dkt. 3, Pl.'s Br. at 10-11. Those cases are not dispositive of the issues in this proceeding.

Although the courts in these cases did ultimately grant the requested injunctive relief both courts acknowledged the provision and its application. Cantebury, 833 F. Supp. at 1102 (In most cases, this "anti-injunction" provision would preclude such an injunction.); Climate Control, No. 93-C-0198-E WL 840270 at 6 (purpose of provision is to keep persons… "from hindering and obstructing agency operations.."). In granting the requested relief, the courts found that the HEA provision does not preclude injunctive relief when the Department exceeds its statutory authority. Both cases involved situations where the Department failed to apply statutory provisions relevant to cohort default appeals prior to

9

taking administrative action against the institutions to terminate their ability to participate in the loan programs. Those factors are not present here.

Although Plaintiff maintains that the Department is acting outside its statutory authority by considering the IG investigation in its review of the institution's HCM2 claim, the opposite is true. As part of its oversight responsibilities, the Department has sole discretion in determining whether an institution should be placed on an alternate form of payment for its receipt of Title IV funds. In making that decision, and in processing any claims under the alternate method of payment, the Department has an obligation to consider any information it has in its possession when determining whether a student is eligible for the Title IV funds requested. To find otherwise would prevent the Department from meeting its responsibilities under the HEA.

The injunctive relief requested by Plaintiff is exactly the type of action Congress wanted to thwart when enacting the anti-injunction provision of the HEA. As the Court in Climate Control stated, injunctive relief should not be used to hinder agency operations. That is exactly what Plaintiff is attempting to do in requesting the relief sought. Consequently, Plaintiff's request should be denied.

**B. Plaintiff's Request Does Not Meet the Standards Required For Injunctive Relief**

Parties seeking a preliminary injunction must demonstrate that (1) they are likely to succeed on the merits, (2) they are likely to suffer irreparable harm, (3) the balance of hardships tips in their favor, and (4) the injunction is in the public interest. Metro. Reg'l

Info. Sys., Inc. v. Am. Home Realty Network, Inc., 722 F.3d 591, 595 (4th Cir. 2013) (citing Winter v. Nat. Res. Def. Council, 555 U.S. 7, 20 (2008)); see Pashby v. Delia, 709 F.3d 307, 320 (4th Cir. 2013). "These [last two] factors merge when the Government is the opposing party." Nken v. Holder, 556 U.S. 418, 435 (2009). "A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the 'burden of persuasion' as to the[se] four requisites." All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., 887 F.2d 1535, 1537 (11th Cir. 1989). Plaintiff has failed to meet these clear standards.

### 1. Likelihood of Success on the Merits

Plaintiff has failed to establish that it is likely to succeed on the merits of its case since there is no case ripe for review under the Administrative Procedures Act, 5 U.S.C. § 701 et seq. Agency action is reviewable only if (1) it "mark[s] the 'consummation' of the agency's decision making process," meaning it is neither tentative nor interlocutory, and (2) the action determines rights or obligations or imparts legal consequences. Bennett v. Spear, 520 U.S. 154, 177-78 (1997) (citations omitted). The Supreme Court specifically has underscored that "[a]n agency action is not final if it is only … tentative," and that the "core question is whether the agency has completed its decision making process …." Franklin v. Massachusetts, 505 U.S. 788, 797 (1992) (internal citation omitted). "Only if the '[agency] has rendered its last word on the matter' in question … is its action 'final'

11

and thus reviewable." Whitman v. American Trucking Ass'n, 531 U.S. 457, 479 (2001) (internal citation and quotation omitted).

There can be no plausible argument here that the Secretary's decision constitutes final agency action amenable to APA review. As fully set forth above, the Department is currently in the process of reviewing Plaintiff's HCM2 claim. GE A, Castellanos Decl. at ¶ 19. That review is not complete, and therefore, no final decision on the claim has been made. Even if the Department determines that the request must be rejected based on the errors and issues found in the files, Plaintiff would have the opportunity to resubmit the package before a final decision not to pay on the claim would be made. GE A, Castellanos Decl. at ¶ 12. Since there is no final agency decision, there is no case ripe for review.

Further, Plaintiff's claims that the Department should not consider the IG investigation when determining how to proceed with its review of the HCM2 claim is wholly without merit. As previously discussed, the Department has a statutory responsibility to oversee the Title IV programs and ensure that only eligible students receive Title IV assistance. When an institution is placed on the HCM2 method of payment, the Department fulfills its oversight responsibilities by reviewing student file documentation to ensure that the student is eligible for the funds requested by the institution. If an entity, such as the Department's own IG has information that may impact such a review, the Department would be remiss in not considering that information.[1]

---

[1] It should be noted that the Department has not made a claim that it would never pay the HCM2 request solely due to the IG investigation. Rather, the Department simply stated

12

In addition, contrary to Plaintiff's repeated claims that the students in the HCM2 package are completely separate from the IG investigation, the Department has discovered that 6 of the students included in the HCM2 package were also part of the IG investigation of the Columbus, Georgia location. Since these same students are included in the HCM2 package, the information obtained from the IG is highly relevant to a review of the requested funds for those students at a minimum.

Plaintiff's claim that the IG investigation should not be considered by the Department when reviewing the HCM2 request because the Georgia center was independently operated is baseless. Although Plaintiff repeatedly maintains that the individuals operating the learning centers were completely independent from the main location in North Carolina, this assertion is belied by the institution's own document entitled "Learning Center Manual." GE A, Exhibit 5. This document, provided to the IG by Apex, establishes that the main location did provide directives and procedures to the learning centers. See GE A, Castellanos Decl. at ¶ 21. Even if the learning centers were independently run, Apex/North Carolina signed a PPA with the Department making that institution ultimately responsible for any actions taken at the learning sites. In fact, Apex itself acknowledged its responsibility regarding the Georgia location when its auditor identified over $3 million in potential liabilities from actions being investigated by the IG.

---

that the existence of the IG investigation and the information obtained from the IG necessitated a more thorough and comprehensive review of the request. GE A, Castellanos Decl. at ¶ 19.

GE A, Exhibit 7; Castellanos Decl. at ¶ 23. These factors fully support the Department's right to consider actions taken at the Georgia location when determining how to handle the pending HCM2 request.

The last claim made by Plaintiff is that the Department is statutorily required to pay the HCM2 claims because the central processor processed the student's FAFSAs. Plaintiff's claim is based on a false assumption that the processing of a FAFSA is equal to a determination that the student meets all eligibility requirements and is entitled to the funds requested by the institution. Dkt. 3, Pl.'s Br. at 11-12. As set forth in the Castellanos declaration, when a student's FAFSA is processed by the Department's central processor, the application is only checked for a few basic elements. The fact that an application is approved for funding does not mean that there is a guaranty that the student has met all required eligibility standards. GE A, Castellanos Decl. at ¶ 7. That responsibility rests with the institution and ultimately with the Department during any oversight review. Plaintiff's claim is inaccurate and must be rejected.

Plaintiff has provided no valid basis for its request for relief, and therefore, it cannot meet this initial prong of the injunction standards.

### 2. Irreparable Harm

Plaintiff maintains that if the requested relief is not granted, it will be forced to close its doors which will result in deserving students and the institution's employees being harmed. Dkt. 3, Pl.'s Br. at 12-13. The Department does not dispute that Apex obtains a

14

Case 1:19-cv-00955-TDS-JLW   Document 10   Filed 10/08/19   Page 14 of 19

substantial portion of its funding from the Title IV program. That alone, however, is insufficient to support the requested relief. The purpose of the Title IV programs is not to keep an institution in business, but to assist its students in gaining a post-secondary education. Bowling Green v. U.S. Department of Education, 687 F. Supp. 293, 297 (W.D. Kentucky 1988). In addition, virtually all institutions placed on the HCM2 method of payment claim that they will be closed if the Department does not pay a claim within a set time period. The Department's responsibility to ensure that only eligible students receive Title IV funds and to protect the Federal fisc outweighs any claim an institution makes that it needs the funds to remain in operation.

### 3. Balance of Harm/Public Interest

The Department has the ultimate responsibility for ensuring that Title IV funds are properly spent and for protecting taxpayer dollars, and it must be given latitude on how it conducts those oversight responsibilities. One tool for accomplishing that task is to place an institution on HCM2, so that eligibility documentation can be reviewed prior to Title IV funds being released. If the Department is hampered in any way in conducting its review, it could lead to the improper disbursement of funds to ineligible students. Any funds improperly provided to Plaintiff as a result of the Department having its review hampered would become funds unavailable for students for whom Congress intends the money to be available. Further, if an injunction is ordered in this case there is nothing preventing all institutions placed on the HCM2 method of payment from requesting courts to enjoin the

15

Department from one aspect of its oversight or another. This is clearly not in the best interests of student beneficiaries or the public taxpayers. Consequently, these factors should be weighed in favor of the Department's oversight responsibilities.

## CONCLUSION

Plaintiff's request for injunctive relief should be denied as it is precluded by the anti-injunction provision of the HEA. Further, the facts presented by Plaintiff do not meet the standards necessary for imposing the extraordinary remedy of injunctive relief.

This the 8th day of October, 2019.

Respectfully submitted,

MATTHEW G.T. MARTIN
United States Attorney

/s/ Joan B. Childs
Joan B. Childs
Assistant U.S. Attorney
NCSB #18100
101 South Edgeworth Street, 4th Floor
Greensboro, NC 27401
(336) 333 5351
joan.childs@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| APEX SCHOOL OF THEOLOGY,<br><br>Plaintiff,<br><br>v.<br><br>ELISABETH DEVOS, SOLELY IN HER OFFICIAL CAPACITY AS SECRETARY OF THE UNITED STATES DEPARTMENT OF EDUCATION,<br><br>Defendant. | Civil Action No. 1:19-cv-955 |

## **CERTIFICATE OF WORD COUNT**

I certify that this Brief complies with the word count limit set forth in L.R. 7.3(d). The number of words in this Brief, exclusive of the caption, signature lines, certificate of service, and any cover page or index, according to the word count feature of the word processing software used to prepare the Brief, does not exceed 6,250 words.

This the 8th day of October, 2019.

                                            Respectfully submitted,

                                            MATTHEW G.T. MARTIN
                                            United States Attorney

                                            /s/ Joan B. Childs
                                            Assistant United States Attorney
                                            N.C. Bar. No. 18100
                                            United States Attorney's Office

101 South Edgeworth Street, 4th Floor
Greensboro, NC 27401
Telephone: 336-333-5351
Email: joan.childs@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| APEX SCHOOL OF THEOLOGY,<br><br>Plaintiff,<br><br>v.<br><br>ELISABETH DEVOS, SOLELY IN HER OFFICIAL CAPACITY AS SECRETARY OF THE UNITED STATES DEPARTMENT OF EDUCATION,<br><br>Defendant. | Civil Action No. 1:19-cv-955<br><br>CERTIFICATE OF SERVICE |

I hereby certify that on October 8, 2019, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following CM/ECF participants: Chad Sharkey csharkey@mmmlaw.com

Edgar D. Bueno ebueno@mmmlaw.com

This the 8th day of October, 2019.

    Respectfully submitted,

    MATTHEW G.T. MARTIN
    United States Attorney

    /s/ Joan B. Childs
    Joan B. Childs
    Assistant U.S. Attorney
    NCSB #18100
    101 South Edgeworth Street, 4th Floor
    Greensboro, NC 27401
    (336) 333 5351
    joan.childs@usdoj.gov