IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| APEX SCHOOL OF THEOLOGY, | |
|---|---|
| Plaintiff, | Case No. 1:19-cv-955 |
| v. | |
| ELISABETH DEVOS, SOLELY IN HER OFFICIAL CAPACITY AS SECRETARY OF THE UNITED STATES DEPARTMENT OF EDUCATION, | |
| Defendant. | |

**PLAINTIFF'S REPLY IN SUPPORT OF ITS
EMERGENCY MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff Apex School of Theology hereby submits its Reply in Support of its Emergency Motion for Preliminary Injunction, as follows:

## I. INTRODUCTION

This Court should enjoin DOE.[1] If it does not, ASOT will cease being a school and educating church leaders. As a result of DOE's unjustified and arbitrary action, ASOT has had to implement a "teach-out" program to allow students to finish their program studies at different institutions. In fact, the vast majority of its students have already transferred to other schools. The vast majority of Apex instructors and staff have lost their jobs.

DOE's arguments to continue to delay a funding decision lack merit. Its argument that the HEA's anti-injunction provision precludes relief is misplaced. This Court may

---

[1] All capitalized terms have the same meaning as ascribed to them in ASOT's initial brief, unless noted otherwise.

always enjoin an agency from exceeding its statutory authority. Here, the HEA requires that DOE "shall" pay a request for FSA reimbursement on the basis of the eligibility of the institution and students. The statute confers no discretion on DOE to consider any other factors in processing a reimbursement request. Yet, by its own admission, DOE is delaying or declining to pay ASOT's reimbursement request on the basis of an extrinsic factor – the OIG Investigation of the GA Site. DOE has not and cannot argue the OIG Investigation, which investigated a different site that closed in 2018, can somehow affect the eligibility of ASOT or its students to participate in FSA in Spring 2019. Thus, DOE's conduct exceeds its authority under the HEA and it should be enjoined.

ASOT's request satisfies the standard for preliminary injunctive relief. First, ASOT is likely to succeed on the merits. Even assuming *arguendo* DOE's argument that ASOT's claims are unripe under the Administrative Procedure Act, ASOT is likely to prevail on its separate claim for injunctive relief based on DOE exceeding its statutory authority under the HEA. Further, DOE's factual arguments do not move the needle because none of them address the issue: DOE is considering factors other than institutional and student eligibility when evaluating ASOT's reimbursement request.

DOE does not dispute that ASOT will soon close absent an injunction. Thus, it faces imminent and irreparable harm.

For the same reason, the balance of harm tips decisively in ASOT's favor. The harm ASOT faces absent an injunction is existential. DOE's argument that an injunction will hamper its "review" is a misplaced because, by law, DOE cannot "review" the OIG

Investigation in processing ASOT's request for reimbursement anyway, and DOE has already had plenty of time to complete its process.

The public interest also favors an injunction. Absent injunctive relief, ASOT's community will lose a school, its students will lose their education or be forced to transfer, and its instructors will lose their livelihood.

For these reasons, the Court should GRANT ASOT's motion for preliminary injunction.

## II. ARGUMENT

**(A) The Court May Enjoin DOE because it has Exceeded its Statutory Authority under the HEA.**

DOE erroneously argues this Court lacks authority to enter an injunction. It is true the HEA does not waive sovereign immunity for injunction claims, and ASOT has never argued otherwise. See 20 U.S.C.A. § 1082(a)(2). However, agency action "is *always* subject to check by the terms of the legislation that authorized it; and if that authority is exceeded it is open to judicial review…." I.N.S. v. Chadha, 462 U.S. 919, 954 & n.16 (1983) (emphasis added). See also Hanauer v. Reich, 82 F.3d 1304, 1307 (4th Cir. 1996) ("even when the statutory language bars judicial review, courts have recognized that an implicit and narrow exception to the bar on judicial review exists for claims that the agency exceeded the scope of its delegated authority or violated a clear statutory mandate"); Ulstein Mar., Ltd. v. U.S., 833 F.2d 1052, 1057 (1st Cir. 1987) (a court may enjoin "agency actions that exceed agency authority").

Applying this principle, courts have repeatedly recognized that DOE may be enjoined for acting outside the scope of its authority, notwithstanding the HEA's anti-injunction provision.  See California Cosmetology Coal. v. Riley, 110 F.3d 1454, 1461 (9th Cir. 1997) (affirming grant of preliminary injunction where "the Secretary exceeded his authority" under the HEA); Canterbury Career Sch., Inc. v. Riley, 833 F. Supp. 1097, 1102–03 (D.N.J. 1993) ("where the Secretary has exceeded the scope of his authority, this provision does not preclude the district court from granting equitable relief"); Int'l Dealers Sch., Inc. v. Riley, 840 F. Supp. 748, 749 (D. Nev. 1993) ("Defendant argues that section 1082(a)(2) bars any injunctive relief against it."  However, "if [DOE] is still violating its statutory mandate to exclude improperly serviced or collected loans, it would be acting outside its authority, thus allowing for extraordinary relief"); Concorde Career Colleges, Inc. v. Riley, No. 92-1064-CV-W-6, 1994 WL 413185, at *1 (W.D. Mo. July 29, 1994) ("injunctive authority is not proscribed when agency actions exceed agency authority"); Climate Control Inst. of Ok., Inc. v. Alexander, No. 93-C-198-E, 1993 WL 840279, at *6 (N.D. Okla. Aug. 16, 1993) ("This Court finds that it has jurisdiction to grant Plaintiffs' Motion for a Preliminary Injunction against the [DOE]"); Nelson-Charles v. U.S. Dep't of Educ., No. 19CV1616PKCPK, 2019 WL 1675999, at *2 (E.D.N.Y. Apr. 16, 2019) ("The Higher Education Act… specifically limits federal courts' authority by prohibiting the issuance of an '…injunction….'" The prohibition on injunctive relief does not apply, however, if the Secretary has exceeded her statutory authority.").

Canterbury Career Sch., 833 F. Supp. 1097, is instructive.  In that case, an educational institution sued DOE over its administration of FSA programs.  Under the

HEA, DOE is required to review an institution's percentage of student borrowers who default on loans, known as a "cohort default rate" ("CDR"), and to revoke the eligibility of institutions whose CDR eclipses certain benchmarks. In Canterbury Career Sch., DOE notified the plaintiff of a high CDR, and the plaintiff sought an injunction against DOE on the basis of DOE's calculation:

> Plaintiff argues that defendant has acted outside the scope of the authority vested in him under 20 U.S.C. § 1085(m) by failing to exclude improperly serviced or collected loans from the calculation of plaintiff's CDR and by uncritically relying upon the default conclusions of the guaranty agencies without any sort of independent review of these conclusions.
>
> Section 1085(m)(1)(B) provides that "the Secretary *shall* ..., in calculating the cohort default rate, exclude any loans which, due to improper servicing or collection, would result in an inaccurate or incomplete calculation of the cohort default rate."
>
> By the clear language of this statute, the Secretary has no discretion under § 1085(m)(1)(B) regarding the inclusion of loans which are improperly serviced or collected and which would result in an inaccurate calculation of the cohort default rate: such loans are not to be included in the calculation of a CDR. To this effect, the statute mandates that the Secretary must determine whether loans have been improperly serviced or collected before a CDR is calculated.

Canterbury Career Sch., 833 F. Supp. 1097, 1103–04 (emphasis in original). The court found that the plaintiff had presented sufficient evidence that DOE had included improperly services loans in its CDR calculation; thus, the court found "plaintiff has adequately demonstrated on the present record that it is likely that the Secretary has exceeded the scope of his authority. … Therefore, this Court has jurisdiction to award… injunctive relief…." Id., at 1104.

Here, DOE has no discretion but to pay an institution's reimbursement request if the institution and students are eligible for Federal Pell Grants and Direct Loans. By statute, DOE "<u>shall</u> pay to each eligible institution such sums as may be necessary to pay to each *eligible student*… a Federal Pell Grant in the amount *for which that student is eligible*…." 20 U.S.C.A. § 1070a (emphasis added). Likewise, under the Direct Loan program, the DOE "<u>shall</u> provide, *on the basis of the need and the eligibility of students*…, funds for student and parent loans under this part…." 20 U.S.C.A. § 1087b(a) (emphasis added). DOE has no statutory authority to consider other "bases" for providing FSA funds. <u>See generally</u> 20 U.S.C.A. § 1070a, 20 U.S.C.A. § 1087b(a).

Here, DOE exceeded the scope of its authority in processing ASOT's request for reimbursement. Rather than paying ASOT's request for reimbursement of Spring semester 2019 FSA on the basis of institutional and student eligibility, by its own admission, DOE has not paid ASOT on a different basis: an OIG investigation of an off-site location that closed in 2018. Further, DOE has articulated no argument that the OIG investigation somehow affects the eligibility of ASOT's students for Spring semester 2019 FSA.

In its brief, DOE argues it has the "sole discretion" to consider "any information it has in its possession" when determining whether to pay a reimbursement request. Doc 10, p. 10. DOE cites no authority for this proposition, and it contradicts the mandatory language of the HEA requiring DOE "shall" pay institutions if students are eligible. <u>See</u> 20 U.S.C.A. § 1070a; 20 U.S.C.A. § 1087b(a). Thus, DOE has exceeded its authority under the HEA and the court may enjoin DOE for that reason.

**(B)    The Court should Grant a Preliminary Injunction.**

The Court should grant ASOT's request for preliminary injunction because it has satisfied the elements.

(1)    ASOT is likely to prevail on the merits.

For the reasons argued above and in ASOT's initial brief, ASOT is likely to prevail on the merits. DOE admits it has delayed or declined processing ASOT's request for reimbursement of Federal Pell Grants and Direct Loans based on considerations prohibited by statute; namely, the OIG Investigation into the former GA Site. DOE's actions violate 20 U.S.C.A. § 1070a and 20 U.S.C.A. § 1087b(a) and it should be enjoined. See e.g. Canterbury Career Sch., 833 F. Supp. at 1102–06.

DOE's argument that ASOT's claim under the Administrative Procedure Act ("APA") is unripe is beside the point. ASOT disagrees with DOE and will address that issue at the appropriate time, but the ripeness of ASOT's APA claim in no way affects the likelihood it will proceed on its claim for injunctive relief on the basis that DOE exceeded its statutory authority. See e.g. Doc 1 (Compl.), ¶ 86.

DOE's factual arguments lack merit because they do not change the central premise: DOE based a decision to decline or delay payment to ASOT on factors other than student eligibility. DOE first argues it should be able to consider the OIG investigation in the off chance it affects student eligibility for FSA. Doc 10, p. 12-13. But DOE has not articulated how this could possibly be the case. The OIG investigation *does not concern student reimbursement being sought* by ASOT for Spring semester 2019. Doc 4 (High Dec.), ¶¶ 14-18. Rather, the OIG investigation, which has *languished*

- 7 -

Case 1:19-cv-00955-TDS-JLW   Document 11   Filed 10/22/19   Page 7 of 14

*for more than two and a half years*, concerns a location in another state (Georgia), that was closed in 2018, that was not operated by ASOT, and whose director was not an ASOT employee. Id.

The vast majority of documents that were seized by the OIG on February 26, 2019, and that are apparently still awaiting review by the OIG, did not even pertain to students currently enrolled.[2] The document inventory indicates that the vast majority of documents pertained to school and student activities for the years 2013-2017.

DOE's allegation that six students involved in ASOT's Spring semester 2019 FSA reimbursement request "were also part of the [OIG] investigation" is a red herring. Doc 10, p. 13. DOE cites no evidence for this allegation, other than a conclusory statement in an affidavit that lacks explanation and that cites no documentary support. But even assuming *arguendo* it is true, DOE has not explained how an OIG investigation into the off-site location that those six students attended in 2018 could affect the students' eligibility for Spring semester 2019 FSA. Even assuming those students' FSA awards for 2018 were unauthorized – and DOE has provided no evidence for such a proposition – this does not mean the students are ineligible for Spring semester 2019 FSA.

DOE's argument that ASOT exercised control over the GA Site is irrelevant. Doc 10, p. 13. Even assuming *arguendo* ASOT exercised such control, it does not affect the eligibility of its students for Spring semester 2019 FSA. DOE does not even argue otherwise.

---

[2] This questionable and puzzling seizure of records by the OIG occurred at a time after nine (9) grand jury subpoenas for documents had already been served upon on ASOT and almost two years after the OIG investigation had been initiated.

DOE's argument regarding FAFSAs likewise misses the mark. Doc 10, p. 14. Apparently, DOE's contractor has already processed ASOT's students' FAFSAs and determined the students are eligible for Spring semester 2019 FSA. Doc 4, ¶ 23, Doc 4-4. DOE's argument that this is not the final word on eligibility is misguided. DOE has not disputed that ASOT's students meet the baseline financial eligibility requirements for FSA, as determined by its own contractor, yet DOE is not reimbursing ASOT on the basis of the OIG Investigation.

Importantly, as discussed below, the balance of hardships decisively favors ASOT because it will close absent an injunction, whereas DOE suffers no or minimal harm from processing the application in accordance with the HEA. Where "the balance of hardships tips decidedly in favor of the plaintiff, a preliminary injunction will be granted if the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation." Philips Elecs. N. Am. Corp. v. Hope, 631 F. Supp. 2d 705, 712 (M.D.N.C. 2009). Here, even assuming *arguendo* DOE's arguments addressed above raise questions as to the *certainty* that ASOT will prevail, they do not *foreclose* such a possibility. In other words, ASOT has raised serious, substantial, and difficult questions about whether DOE is acting outside the scope of its authority, and it should be preliminarily enjoined to prevent an existential threat to ASOT.

(2)  ASOT faces irreparable harm.

DOE does not dispute that, in the absence of an injunction, ASOT will close. Doc 10, p. 14-15; Doc 4, ¶¶ 39-40. ASOT simply does not have enough cash to outlay

another semester of FSA and it has begun its "teach-out" program to wind down operations. Doc 4, ¶¶ 39-40.

DOE's responses border on frivolous. DOE's argument regarding the purpose of the HEA is irrelevant. Doc 10, p. 14. By exceeding its statutory authority, DOE is fatally harming ASOT, and it is entitled to injunction on that basis. See Mountain Valley Pipeline, 918 F.3d at 366 ("economic damages may constitute irreparable harm"); Canterbury Career Sch., 833 F. Supp. at 1105 ("where denial of an injunction would result in a school no longer receiving income provided by student financial aid programs and where such income is necessary to continue operating the school, this would constitute irreparable injury.").

DOE's argument that "virtually all institutions" placed on HCM2 status complain of financial ruin is beyond irrelevant. Doc 10, p. 14. What other institutions argue in other litigation has no bearing on ASOT's arguments and evidence.

For these reasons, DOE has not disputed that the absence of an injunction will be fatal to ASOT. Accordingly, it faces imminent, irreparable harm.

(3)     The balance of harms favors an injunction.

The balance of harms decisively favors granting an injunction. As argued above, ASOT's harm is existential and irreparable, and DOE does not dispute it.

By contrast, the harm to DOE in issuing an injunction is minimal or none. ASOT requests this Court enjoin DOE from delaying or declining to process its reimbursement request on the basis of the unrelated OIG Investigation. DOE erroneously argues this relief would somehow "hamper" its "review" of ASOT's reimbursement request. Doc

10, p. 15.  This argument misses the mark because the only "review" DOE contends it is still undertaking is of the OIG Investigation itself, which by statute it is not permitted to consider in connection with ASOT's reimbursement request.  Further, DOE's argument is disingenuous and implausible.  By DOE's own admission, it typically needs only 30 days to process reimbursement requests submitted by institutions operating in HCM2 status.  See Doc 4-3, p. 11 ("Normal processing time is thirty (30) days from the date the submission is received."); Doc 10-1, ¶ 13 ("The Department attempts to process HCM2 claims within 30 days of submission.").  ASOT submitted its request in late July 2019, nearly 90 days ago.  Doc 4, ¶¶ 29-32.  ASOT's reimbursement request covers only about 265 students.  See Doc 4-9.  DOE's complaint that it has had insufficient time to evaluate the request strains credulity.  See Canterbury Career Sch., 833 F. Supp. at 1105–06 ("The harm to DOE that would result from a grant of the injunction is minimal at best.").

For these reasons, the balance of harm decisively favors an injunction.

(4)     The public interest favors an injunction.

DOE does not dispute ASOT provides important religious educational services to its students, particularly underprivileged students who seek religious educational services, that will be lost if it is forced to close.  Further, closure will harm ASOT's students, who will need to change programs or abandon their education, and ASOT's employees, who will lose their source of employment.  Thus, the public interest strongly favors an injunction.

### III. CONCLUSION

For these reasons, this Court should GRANT ASOT's motion for preliminary injunction.

Respectfully submitted this 22nd day of October, 2019.

**MORRIS, MANNING & MARTIN, LLP**

/s/ *Edgar D. Bueno*
Chad Sharkey
North Carolina Bar No. 29538
csharkey@mmmlaw.com
4131 Parklake Ave. Suite 340
Raleigh, NC 27612
Telephone: (919)806-2969
Facsimile: (919) 806-2057
Edgar D. Bueno
*Specially Appearing*
ebueno@mmmlaw.com
1600 Atlanta Financial Center
3343 Peachtree Road, N.E.
Atlanta, GA 30326
Tel: (404) 233-7000
Fax: (404) 365-9532
*Attorneys for Plaintiff*

## **LOCAL RULE 7.3(d)(1) CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing brief does not exceed the word count imposed by Local Rule 7.3(d)(1).

/s/ *Edgar D. Bueno*
Edgar D. Bueno

## CERTIFICATE OF SERVICE

I hereby certify that I have electronically filed the foregoing **PLAINTIFF'S REPLY IN SUPPORT OF ITS EMERGENCY MOTION FOR PRELIMINARY INJUNCTION** with the Clerk of Court by using the CM/ECF system which will automatically send email notification of such filing to all counsel of record.

This 22nd day of October, 2019.

/s/ *Edgar D. Bueno*
Edgar D. Bueno

12984035 v1